IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BENJAMIN J. WARD,
    Petitioner,

vs.                                                    3:04cv3/MCR/EMT

JAMES CROSBY, JR.,
    Respondent.
_____/

**REPORT AND RECOMMENDATION**

    Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondent filed an answer (Doc. 4), and Petitioner filed a reply (Doc. 8). Petitioner subsequently filed a "Motion to Dismiss/Want of Prosecution" (Doc. 9).

I.    BACKGROUND

    The procedural background of this case is undisputed. Petitioner was charged in the Circuit Court in and for Santa Rosa County, Florida, with burglary, grand theft, two counts of attempted burglary, and criminal mischief in Case Numbers 00-208A-CF-B, 00-209A-CF-B, and 00-210A-CF-B (Doc. 4, Ex. A at 6, 7, 25). He was arrested for the crimes on February 27, 2000, and released on bond (*id.* at 1-3). On March 29, 2000, Petitioner was arrested by federal authorities for a federal offense and taken to the Escambia County Jail (Doc. 1, continuation page "B").

    On April 4, 2000, the Santa Rosa Circuit Court issued an order directing the Sheriff of Santa Rosa County to transport Petitioner from the Escambia County Jail to the Santa Rosa County Jail for arraignment on the state charges on May 1, 2000 (Doc. 4, Ex. A at 9). Petitioner appeared for the arraignment and was returned to the Escambia County Jail the same day (Doc. 1, continuation page "B;" Doc. 4 at 2-3).

On August 22, 2000, Petitioner was sentenced on the federal charge and returned to the Escambia County Jail (Doc. 1, continuation page "B"). On September 10, 2000, Petitioner was transferred by federal authorities from the Escambia County Jail to the Santa Rosa County Jail to await designation to a federal facility (*id.*). On October 4, 2000, Petitioner was transported to the Santa Rosa Courthouse for an appearance on the state charges and returned to the Santa Rosa County Jail the same day (*id.*). On October 14, 2000, Petitioner was sent to a federal holding facility in Tallahassee, Florida, and the next day he was transported to the United States Penitentiary in Atlanta, Georgia ("USP-Atlanta") (*id.*).

On October 27, 2000, USP-Atlanta issued a "Detainer Action Letter" to the Santa Rosa County Sheriff's Office requesting that it notify USP-Atlanta of the disposition, if any, of the state charges (Doc. 4, Ex. A at 33). The letter also notified the Sheriff's Office that if it desired a detainer placed, it must forward a certified copy of the warrant with a cover letter indicating a desire to have the warrant lodged as a detainer (*id.*). On November 29, 2000, the Sheriff's Office sent a copy of the "Detainer Action Letter" to the Santa Rosa Circuit Court (*id.* at 32-33; Doc. 9, attachment). On December 7, 2000, a Santa Rosa Circuit Court judge issued a capias directing the sheriffs of the State of Florida to hold Petitioner for failure to appear in court the previous day (*id.* at 34-35). On December 27, 2000, the state court issued a writ of habeas corpus ad prosequendum to the Santa Rosa County Sheriff and the Superintendent of USP-Atlanta directing the production of Petitioner in Santa Rosa County for court appearances in February and March of 2001 (*id.* at 38-39). A second writ of habeas corpus ad prosequendum was issued on June 6, 2001 (*id.* at 46-47). Petitioner was transported from USP-Atlanta to Santa Rosa County for court appearances beginning on July 31, 2001 (*id.*).

On August 8, 2001, Petitioner entered a plea of nolo contendere to the state charges and was sentenced to time served on the criminal mischief charge and five years of incarceration on the remaining charges, to run concurrently with each other and with his federal sentence (*id.* at 51-66). Petitioner filed a notice of appeal in the Florida First District Court of Appeal ("First DCA") and an initial brief challenging his conviction and sentence on the ground that it violated the Interstate Agreement on Detainers Act, 18 U.S.C. § 2 (hereinafter "Agreement") (Doc. 4, Exs. B, C). On November 7, 2001, the appeal was dismissed for Petitioner's failure to comply with an order of the

court (Doc. 4, Ex. D). Petitioner filed a "Request to Reconsidered [sic]," which the appellate court construed as a motion to reinstate the appeal and denied without prejudice on December 19, 2001 (Doc. 4, Ex. E). Petitioner filed an Amended Notice of Appeal on December 27, 2001 (Doc. 4, Ex. F).

On May 23, 2002, Petitioner filed a motion for postconviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, in which he raised as the sole ground for relief the trial court's lack of jurisdiction to convict and sentence him due to violations of Article IV(c) and Article IV(e) of the Agreement (Doc. 4, Ex. H). The trial court denied the motion on the ground that Petitioner's claim was refuted by the record (Doc. 4, Ex. I). Petitioner filed a motion for rehearing, which was denied on August 14, 2002 (Doc. 4, Exs. J, K). Petitioner appealed the decision to the Florida First DCA (Doc. 4, Ex. L). On April 17, 2003, the First DCA affirmed the decision without opinion, with the mandate issuing June 5, 2003 (Doc. 4, Exs. N, Q). Petitioner filed a Notice to Invoke Discretionary Jurisdiction in the Florida Supreme Court on April 29, 2003, which was denied on May 14, 2003 (Doc. 4, Exs. R, S).

Petitioner filed the instant habeas action on December 22, 2003 (Doc. 1 at 7). He challenges his conviction on the ground that he received ineffective assistance of counsel for counsel's failure to seek dismissal of the state charges against him due to violations of the Agreement (*id.* at 5, continuation pages at A). In the answer to the petition, Respondent asserts that the instant petition in untimely (Doc. 4 at 6-7). Additionally, Respondent argues Petitioner failed to exhaust his state court remedies (*id.* at 8-9). Alternatively, Respondent contends Petitioner failed to show his counsel performed in a deficient manner by failing to object to the trial court's jurisdiction on the grounds that the State violated the Agreement (*id.* at 9-17).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States." As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism

and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.

> Section 2254 now provides:
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).[1] The appropriate test in habeas cases was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[1] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-375, 390-399, 120 S.Ct. at 1499-1503, 1511-1516); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and –-except as to the footnote – Scalia) in part II (529 U.S. at 403-413, 120 S.Ct. at 1518-1523).  The opinion of Justice Stevens in Part II was joined by Souter, Ginsburg, and Breyer.

Case No.: 3:04cv3/MCR/EMT

*Id.*, 529 U.S. at 412-13; Ramdass v. Angelone, 530 U.S. 156, 120 S.Ct. 2113, 2119-20, 147 L.Ed.2d 125 (2000).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." § 2254(e)(1); *see* Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003); Fugate v. Head, 261 F.3d 1206, 1215 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002) (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835-36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); *see also* Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations). Although Williams set forth the Supreme Court's interpretation of § 2254(d)(1), not § 2254(d)(2), the Court subsequently enunciated the § 2254(d)(2) standard:

> Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2); see also Williams, 529 U.S. at 399, 120 S.Ct. 1495 (opinion of O'CONNOR, J.).

Miller-El, 537 U.S. 322, 123 S.Ct. at 1041 (dicta).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding. *See* Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343-45 (11th Cir. 2002); Fugate, 261 F.3d 1206. First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication. Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343. Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law. Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344. "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially

different' from the relevant Supreme Court precedent." Wellington, 314 F.3d at 1260 (quoting Fugate, 261 F.3d at 1216 (quoting Williams, 529 U.S. at 405)). "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404-04). If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must go to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority." Fugate, 261 F.3d at 1216. Likewise, if the facts of the Supreme Court cases and petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." *Id.* (citing and quoting Williams, 529 U.S. at 406).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 410. The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Bell v. Cone, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (quoting Williams, 529 U.S. at 411). Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003). A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway

courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004). Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to Eleventh Circuit precedent to demonstrate reasonable applications of Supreme Court precedent. Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n. 4 (11th Cir. 2002).

III.   EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[2] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, *supra*, 513 U.S. at 365-66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); Picard, *supra*, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In Picard v. Connor, *supra*, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.* at 278, the Court rejected the contention that the

---

[2]Section 2254 provides, in pertinent part:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

petitioner satisfied the exhaustion requirement by presenting the state courts with only the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. In <u>Anderson v. Harless</u>, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the district court granted habeas relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. 459 U.S. at 7 (citing <u>Sandstrom v. Montana</u>, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)). The only manner in which the habeas petitioner had cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." <u>Anderson</u>, *supra*, 459 U.S. at 7 (internal quotation marks omitted). The Supreme Court expressed doubt that a defendant's citation to a state court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. *Id.* at 7 and n. 3. Thus, the Court concluded the petitioner had not fairly presented his claim to the state courts.

Years later, the Supreme Court readdressed the "fair presentation" requirement in <u>Duncan v. Henry</u>, *supra*. The <u>Duncan</u> Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[3] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the

---

[3]The petitioner in <u>Duncan</u> raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 366.

Very recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004).  The Baldwin Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*

Prior to Duncan, the Eleventh Circuit broadly interpreted the "fair presentment" requirement. *See e.g.*, Watson v. Dugger, 945 F.2d 367 (11th Cir. 1991) (finding issue to be exhausted when petitioner argued in state court that trial court had failed to follow state law which required proof of all elements of the crime, and argued in federal court that this was a due process violation); Mattox v. Dugger, 839 F.2d 1523 (11th Cir. 1988) (holding that a federal habeas corpus petition should not be dismissed on grounds of procedural default when a petitioner has previously brought an issue before a state court alleging only state law violations, when such a claim is equally supported by federal law, and the state cites such federal law in support of its position).  However, after Duncan, the Eleventh Circuit has taken a more restrictive approach.  For example, in Zeigler v. Crosby, 345 F.3d 1300, 1307 (11th Cir. 2003), the Eleventh Circuit held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution.  The court specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in the

petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that the petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

Claims which have not been fairly presented but are defaulted from state court review are considered technically exhausted, because no remedies are available for purposes of § 2254(c). Coleman v. Thompson, 510 U.S. 722, 732, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); Engle v. Isaac, 456 U.S. 107, 125-26 n.28, 102 S.Ct. 1558, 1570 n.28, 71 L.Ed.2d 783 (1982). This court will consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default, or was never presented but the state court would now find the claim procedurally barred. Coleman, 501 U.S. at 734-35 and n.1; Caniff v. Moore, 269 F.3d 1245, 1427 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). However, a petitioner may obtain federal review of his claim if the state procedural rule is applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. Ford v. Georgia, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. Tower, 7 F.3d at, 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. at 488, 106 S. Ct. at 2645). To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."

Case No.: 3:04cv3/MCR/EMT

Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

IV.    TIMELINESS

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L.No. 104-132, 110 Stat. 1214, which became effective on April 24, 1996, a one year period of limitation applies to the filing of a habeas petition by a person in custody pursuant to a state court judgment. The limitation period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(1).

In the instant case, Petitioner does not assert that a government-created impediment to his filing existed, that he bases any of his claims on a right newly recognized by the Supreme Court, or that the facts supporting his claims could not have been discovered through the exercise of due diligence before the filing of this petition. Thus, the statute of limitations must be measured from

the remaining statutory trigger, which is the date on which his conviction became final. *See* 28 U.S.C. § 2244(d)(1).

It is now well established that when a Florida defendant directly appeals his conviction but does not seek certiorari review of the decision affirming the conviction, the one-year limitations period for filing a federal habeas petition begins to run ninety (90) days after issuance of the appellate court's decision.[4] Bond v. Moore, 309 F.3d 770 (11th Cir. 2002); Jackson v. Secretary for the Dep't of Corrections, 292 F.3d 1347, 1349 (11th Cir. 2002); *accord* Clay v. United States, 537 U.S. 522, 525, 123 S.Ct. 1072, 1075, 155 L.Ed.2d 88 (2003); Close v. United States, 336 F.3d 1283, 1284-85 (11th Cir. 2003). In the instant case, the First DCA issued its decision dismissing Petitioner's appeal on November 7, 2001. Petitioner did not seek review of his conviction in the Florida Supreme Court or the United States Supreme Court. Thus, Petitioner's one-year limitations period began to run on February 5, 2002, upon expiration of the 90-day period for seeking certiorari review. Accordingly, the limitation period for filing a federal habeas petition expired on February 5, 2003, unless the limitations period was tolled pursuant to statutory or equitable tolling principles.

Section 2244(d)(2) provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In the instant case, the record shows Petitioner filed a motion for postconviction relief in the state courts on May 23, 2002, upon expiration of one hundred six (106) days of the federal limitations period. The motion was pending until June 5, 2003, upon issuance of the appellate court's mandate affirming the lower court's denial of the motion. Petitioner filed his federal habeas petition on December 22, 2003, one hundred ninety-nine (199) days later. As only three hundred five (305) days of the 365-day federal limitations period had expired at the time Petitioner filed his federal habeas petition, the petition is timely.

V.   PETITIONER'S CLAIMS

---

[4] The 90-day period for filing in the United States Supreme Court a petition for writ of certiorari seeking review of a decision of a state appellate court runs from the date of the state court's opinion. *See* Sup. Ct. R. 13.3.

Petitioner asserts only one ground for relief in the instant petition, namely, that he received ineffective assistance of counsel due to counsel's failure to seek dismissal of the state charges based upon the State's violation of the Interstate Agreement on Detainers Act (Agreement) (Doc. 1 at 5, continuation page "A"). In Petitioner's reply to Respondent's assertion that he failed to exhaust this claim, and therefore, the petition should be dismissed, Petitioner attempts to salvage this action by arguing he actually asserted <u>five</u> grounds for relief in the instant petition: "1.) ineffective assistance of counsel, 2.) Interstate Agreement on Detainers, I.A.D. violated, 3.) I.A.D. as to speedy trial violation, 4.) State of Florida violations as to time factors, 5.) <u>Alabama v. Bozeman</u>, 150 L.Ed.2d 188 (2001)." (Doc. 8 at 2). Petitioner states if this Court finds his ineffective assistance claim unexhausted, he wishes to abandon that claim and proceed with the remaining four claims (*id.*). Alternatively, if this Court finds his claim technically exhausted due to a state procedural bar, he alleges cause for the default and prejudice resulting from this Court's failure to consider the claim (*id.*).

This Court liberally construes Petitioner's assertion that he raised five grounds for relief in the instant petition as a request to amend the petition to include claims of substantive violations of the Agreement. In light of the fact that Respondent addressed the merits of these additional claims as part of its discussion of the merits of Petitioner's ineffective assistance claim, this Court will deem the petition amended to include the claims of substantive violations of the Agreement.

    A.    <u>Substantive Violations of the Agreement</u>

Initially, the parties do not dispute that the State of Florida and the Federal Government are parties to the Agreement. Petitioner alleges two substantive violations of the Agreement: (1) the State violated the "anti-shuttling" or "no return" provision of Article IV(e) the Agreement, and (2) the State violated the "speedy trial" provisions of Article IV (c) of the Agreement (Doc. 8 at 4-7).

    1.    Clearly Established Supreme Court Law

The Interstate Agreement on Detainers Act creates uniform procedures for lodging and executing a detainer, meaning, a legal order requiring a State to hold a currently imprisoned individual when he has finished serving his sentence so that he may be tried by a different State for a different crime. *See* <u>Alabama v. Bozeman</u>, 533 U.S. 146, 148, 121 S.Ct. 2079, 2082, 150 L.Ed.2d 188 (2001). The Agreement provides for expeditious delivery of a prisoner to the receiving State

for trial prior to termination of his sentence in the sending State, thereby minimizing interruption of the prisoner's ongoing prison term and rehabilitation. *Id.*

Article III of the Agreement provides, in relevant part:

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place on his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint: . . .
* * *
(d) Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition of all untried indictments, information, or complaints on the basis of which detainers have been lodged against the prisoner from the State to whose prosecuting official the request for final disposition is specifically directed. . . . If trial is not had on any indictment, information, or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.
* * *

Article IV of the Agreement provides, in relevant part:

(a) The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available in accordance with article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated: *Provided*, That the court having jurisdiction of such indictment, information, or complaint shall have duly approved, recorded, and transmitted the request: *And provided further*, That there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the Governor of the sending State may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.
* * *
(c) In respect of any proceeding made possible by this article, trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel

      being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

          \* \* \*

      (e) If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

The provisions of the Agreement are triggered only when a "detainer" is filed with the custodial State (sending) by another State (receiving) having untried charges pending against the prisoner. United States v. Mauro, 436 U.S. 340, 343, 98 S.Ct. 1834, 1839, 56 L.Ed.2d 329 (1978). The Agreement does not define "detainer;" however, the Supreme Court has defined it for purposes of the Agreement as "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent."[5] Carchman v. Nash, 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985). Unless the provisions of the Agreement are activated by the filing of a detainer, use of a writ of habeas corpus ad prosequendum directing the production of a prisoner for trial on criminal charges does not trigger application of the Agreement. Mauro, 436 U.S. at 349.

          2.      Federal Review of State Court Decision

In his state postconviction motion, Petitioner asserted that the provisions of the Agreement were triggered on May 1, 2000, when he was transported from the Escambia County Jail, where he was confined upon his arrest by federal officials, to the Santa Rosa Courthouse for an appearance on the state charges (Doc. 4, Ex. H at 8). Petitioner contends his transfers from federal to state custody on May 1, 2000, October 4, 2000, and July 31, 2001, violated the "anti-shuttling" and "no return" provision set forth in Article IV(e) of the Agreement (*id*.). Additionally, he argues the State violated the "speedy trial" provision set forth in Article IV(c) by failing to conclude his criminal proceedings within 120 days of May 1, 2000 (*id*.).

---

[5]The Eleventh Circuit has adopted this definition. *See* Remeta v. Singletary, 85 F.3d 513, 517 n. 4 (11th Cir. 1996) (citing Carchman).

In the order denying the postconviction motion, the trial court made the following factual findings:

> 1. The Defendant was arrested on the subject charges on February 27, 2000. (Exhibit A). He bonded out with directions to appear on April 3, 2000. The Defendant failed to appear and the Court set a new date of May 1, 2000, with an order to transport the Defendant from the Escambia County Jail. (Exhibit B).
> Subsequent to his return to the Escambia County Jail, the Defendant was sentenced by the Federal authorities and transferred to the Federal Penitentiary in Atlanta, Georgia. On June 6, 2001, this Court issued a Writ of Habeas Corpus Ad Prosequendum requiring the Defendant to be made available for court appearances on July 31, August 8 and August 20, 2001. (Exhibit C).
> * * *
> 3. . . . He was transported between counties in the State of Florida by Order of the Court and between the Federal Penitentiary, Atlanta, Georgia and Santa Rosa County, Florida by writ of Habeas Corpus Ad Prosequendum.

(Doc. 4, Ex. I at 13). Applying Mauro, the state court concluded the provisions of the Agreement were not triggered because Petitioner was transported between Florida counties by court order and between the federal penitentiary in Atlanta and Santa Rosa County by writ of habeas corpus ad prosequendum (*id.* at 14).

Petitioner contends the applicable legal precedent is Alabama v. Bozeman, 533 U.S. 146 2001). However, in Bozeman, the parties did not dispute that a violation of the Agreement occurred. *Id.* at 152. At issue in Bozeman was whether Article IV(e) required dismissal of the indictment due to the violation, despite the fact that the interruption of the defendant's initial imprisonment lasted for only one day. *Id.* at 149. However, the issue in the instant case is whether the provisions of the Agreement were ever triggered. The controlling Supreme Court precedent on this issue is Mauro.

Petitioner has failed to show by clear and convincing evidence that the state court's factual findings are incorrect, therefore, the findings are presumed correct. Applying Mauro to these facts, this Court concludes the state court decision was not contrary to or an unreasonable application of Mauro.

Nothing in the record shows that state officials lodged anything constituting a "detainer" with federal officials either before or after Petitioner's arrival at the federal penitentiary. There is no indication that the orders of transfer issued by the state court to state prison officials prior to Petitioner's transfer to USP-Atlanta were ever lodged with federal officials. Furthermore, there is

no indication state authorities forwarded anything to federal officials in response to the "Detainer Action Letter" indicating a desire for a detainer.[6] Because a detainer had not been previously lodged, the writ of habeas corpus ad prosequendum issued by the state court to state and federal officials did not trigger application of the Agreement. Mauro, 436 U.S. at 349; United States v. Beard, 41 F.3d 1486, 1489 (11th Cir. 1985 (citing Mauro)).[7] Therefore, Petitioner has failed to show the state court's denial of his substantive claims of violations of the Agreement was contrary to or an unreasonable application of Supreme Court law.

Moreover, even if Petitioner demonstrated violations of the Agreement, he is not entitled to federal habeas relief. A State's failure to abide by the provisions of the Agreement is not cognizable under section 2254 when the habeas petitioner suffered no prejudice attributable to the violations. *See* Reed v. Farley, 512 U.S. 339, 352, 114 S.Ct. 2291, 2299, 129 L.Ed.2d 277 (1994); Remeta v. Singletary, 85 F.3d 513, 519 (11th Cir. 1996). In the instant case, Petitioner does not allege the purported violations of the Agreement affected his decision to plead guilty to the state charges. Furthermore, his contention that the alleged violations deprived the state court of jurisdiction has been rejected by the Eleventh Circuit. Remeta, 85 F.3d at 518-19. Accordingly, his claim should be denied.

---

[6]Although the record shows the Santa Rosa Circuit Court issued a capias on December 7, 2000, for Petitioner's failure to appear at a scheduled court appearance the previous day, the capias was directed to the sheriffs of the State of Florida, and there is no indication it was sent to officials at USP-Atlanta with a request that it be lodged as a detainer (*see* Doc. 4, Ex A at 34-35).

[7]Although the writ in Mauro was issued by a federal court, the decision has been followed reardless of whether the writ was issued by a federal or state court. *See* Runck v. State, 497 N.W.2d 74, 80 (N.D. 1993) (citing People v. McLemore, 411 Mich. 691, 311 N.W.2d 720 (1981), and cases collected therein).

     B.     <u>Ineffective Assistance of Counsel</u>

Petitioner asserts a related claim of ineffective assistance of counsel for counsel's failure to seek dismissal of the state charges based upon the alleged violations of the Agreement discussed in the previous section of this Report and Recommendation. Respondent contends Petitioner failed to fairly present this claim to the state courts, therefore, the claim is unexhausted and subject to dismissal. In response, Petitioner does not dispute that he has not presented his ineffective assistance claim to the state courts (*see* Doc. 8 at 2). Indeed, his state postconviction motion contains no mention of counsel's performance (*see* Doc. 4, Ex. H). Therefore, Respondent is correct that Petitioner has not exhausted state court remedies as to his ineffective assistance claim.

However, this Court may reach the merits of the claim notwithstanding Petitioner's failure to exhaust. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). In light of this Court's previous conclusion that Petitioner failed to show that the provisions of the Agreement were triggered, this Court concludes Petitioner's counsel did not perform in a constitutionally deficient manner by failing to seek dismissal of the charges on the ground that the State violated the Agreement. Accordingly, his ineffective assistance of counsel claim must fail.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

1.     That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

2.     That Petitioner's "Motion to Dismiss/Want of Prosecution" (Doc. 9) be **DENIED** as moot.

At Pensacola, Florida, this 26th day of January, 2005.

                    /s/ *Elizabeth M. Timothy*
                    **ELIZABETH M. TIMOTHY**
                    **UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).